VERAY MOLINARY, PLAINTIFF, APPELLANT AND APPELLEE, V.
MARÍN ET AL., DEFENDANTS, APPELLEES AND APPELLANTS.

APPEAL from the District Court of Aguadilla in an Action
to Set Apart Property.

No. 1533.—Decided March 8, 1918.

INHERITANCE—PROPERTY SET APART.—An action to enforce compliance with the
obligation to set apart property should be governed by section 936 of the
Revised Civil Code in connection with section 935, and not by repealed sec-
tion 799, when the complaint, in order to show the reservable character of
the half of a house, sets up that the predecessor of the defendants acquired
said property while a widower, from a son of his first marriage who suc-
ceeded thereto upon the death of the mother, and that the plaintiff is the
only descendant of the deceased spouse.

ID.—ID.—LINEAL RESERVATION.—The obligation to set apart property established
by sections 935 and 936 of the Civil Code is special, for it affects only the
survivor who contracts a second marriage, while the lineal reservation re-
ferred to in section 799 affects any ascendant who may be in the conditions
therein specified.

ID.—ID.—GIFT.—Section 937 of the Civil Code, providing that the obligation
to set apart shall cease when things given or left by the children to their
father or mother, with knowledge that they had married a second time, are
in question, should be taken to refer to gifts and wills, inasmuch as things
otherwise given or left are excluded from the reservation beforehand by
section 969 of the code.

THINGS.—For a definition of the term "things" the provisions of Title I, Book
Second, of the Civil Code may be consulted.

RIGHT OF RESERVATION—NULLITY OF RECORD.—When there is no right to have
property set apart the nullity of the mention of such right in the registry
and its consequent cancellation necessarily follow.

ID.—POSSESSORY TITLE.—A possessory title proceeding is not an adequate one
for the recording of the right of reservation.

The facts are stated in the opinion.

*Messrs. Francis & Soto* for the plaintiff.

*Messrs. Reichard & Reichard* for the defendants.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of
the court.

On April 12, 1915, José Bernabé Veray Molinary brought
an action against Amelia Marín and Teresa, Ana and Fran-
cisco Veray y Marín in the District Court of Aguadilla for

the recovery of reservable property, alleging the following as material facts:

1. That house No. 2 Progreso Street, Aguadilla, described in the complaint, is recorded in the Registry of Property of Aguadilla; 2, that the said property is not encumbered by any lien and is valued at $3,000, one half thereof being recorded in the name of plaintiff José Bernabé Veray Molinary and the other half in the name of José Veray Llamas; 3, that the half recorded in the name of José Veray Llamas was and is recorded as reservable property, Veray Llamas having inherited it from his son, Francisco Veray Marxuach, who died celibate after inheriting the property from Isabel Marxuach Echevarría, whose death occurred during the lifetime of Francisco Veray Marxuach; 4, that José Veray Llamas was married first to Isabel Marxuach Echevarría, who bore him three sons named Francisco, José and Francisco, who died during the lifetime of Veray Llamas; 5, that the two sons named Francisco Veray Marxuach died without having married and without leaving descendants; that José Veray Marxuach married Antonia Molinary and both he and his wife died without leaving any other descendant than plaintiff José Bernabé Veray Molinary; 6, that on October 17, 1911, José Veray Llamas died testate, being married at the time of his death to Amelia Marín Pérez and having designated in his will his three children born of the marriage, Teresa, Ana and Francisco Veray Marín, and his grandson, plaintiff José Bernabé Veray Molinary, as his heirs; 7, that José Bernabé Veray Molinary is the sole descendant of Isabel Marxuach Echevarría.

The plaintiff further alleges that since the death of José Veray Llamas on October 17, 1911, the defendants have been receiving half of the rental of the house notwithstanding the right of the defendant to collect the same, the said half, at the rate of thirty-five dollars monthly for a period of three years, five months and nineteen days, amounting to $1,457.

The complaint concludes with a prayer for judgment as follows:

That the plaintiff is the sole and lawful owner of the half of the urban property which is described in the complaint and recorded as reservable property in the name of José Veray Llamas in the registry of property.

That the registrar of property of the district of Aguadilla enter the proper marginal note or record in favor of the plaintiff so that the said half now recorded in the name of José Veray Llamas shall be recorded in favor and in the name of José Bernabé Veray Molinary to whom the same belongs because he is the only descendant of Isabel Marxuach Echevarría.

That neither jointly nor separately have the defendants any right to collect or receive any sum as rent of the property in question, because the property does not belong to them or to any one of them.

That the defendants be adjudged to pay to the plaintiff the sum of $1,457 unduly collected and received by them, together with the costs, disbursements and attorney fees taxed in the suit.

The defendants admitted the fundamental facts alleged in the complaint in order to establish the reservable character of the half of the urban property in suit, but absolutely denied that that half or any part of it was of such a character, wherefore they prayed that the complaint be dismissed. They also filed a counter-complaint praying for judgment declaring the record of the possessory title to the urban property described in the complaint to be null and void and ordering the registrar of property to cancel the record of the said possessory title, with the costs, expenses and attorney fees against the plaintiff.

The case came on for trial and on February 26, 1916, the court rendered judgment dismissing the complaint and the counter-complaint both as to form and on their merits, with-

out special imposition of costs, expenses, disbursements and attorney fees.

From the foregoing judgment both parties appealed, the plaintiff from the part dismissing the complaint and the defendants from the part dismissing the counter-complaint.

The Aguadilla court disposed of the case on the theory that it should be governed by sections 935 and 936 of the Revised Civil Code, while the plaintiff-appellant maintains that the statute applicable is section 799; for although this section was repealed by the Act of March 8, 1906, such repeal cannot be given retroactive effect, since the obligation to reserve the property originated in the year 1890 when Francisco Veray Marxuach died. Section 3 of the same code provides that laws shall not have retroactive effect unless they expressly so prescribe, and that in no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action.

Sections 799, 935 and 936 of the Civil Code, read as follows:

"Sec. 799.—The ascendant who inherits property from his descendant, acquired by the latter for a good consideration from another *descendant* [ascendant] or from a brother or sister, is obliged to reserve the property he may have acquired by force of law in favor of the relatives within the third degree belonging to the line from which such property originated."

"Sec. 935.—The widower or widow contracting a second marriage shall be obliged to set apart for the children and descendants of the former [marriage] the ownership of all the property he may have acquired from the deceased spouse by will, by intestate succession, by gift or for any other good consideration, but not his or her half of the conjugal profits.

"Sec. 936.—The provision of the preceding section is aplicable to property which has been acquired for the considerations mentioned therein, by the widower or widow from any of the children of the first marriage, and to that received from the relatives of the deceased by reason of personal considerations for the same."

Considered in relation to the statutes transcribed, the allegations of the complaint that José Veray Llamas was married first to Isabel Marxuach Echevarría and that the plaintiff is the latter's only descendant, which allegations are relied on to show the reservable character of the half of the house No. 2 Progreso Street, Aguadilla, easily lead to the conclusion that the action should be governed by sections 935 and 936 of the Revised Civil Code, as held by the district court, and not by repealed section 799. That conclusion is strengthened by taking into account that according to a certificate of the Registrar of Property of Aguadilla, which was admitted in evidence at the trial, in the record of the house in question, which was exhibited as one of the grounds of the complaint, it is stated that Veray Llamas inherited one half of the value of the house and lot from his son, Francisco Veray Marxuach, who died a bachelor in 1890, and Veray Molinary inherited the other half from his father, José Veray Marxuach, who died in 1884, Francisco and José Veray Marxuach having inherited the property in equal shares from their mother, Isabel Marxuach Echevarría, in 1878, the half belonging to Veray Llamas being of the character of reservable property because he contracted a second marriage, all of which appears in the record of the possessory title proceeding brought in the Court of First Instance of Aguadilla and approved on May 18, 1891.

Moreover, as the obligation to reserve established by sections 935 and 936 of the Civil Code is a special obligation, inasmuch as it affects only the widower or widow who may contract a second marriage, whereas the lineal reservation referred to in section 799 affects any ascendant found in the conditions therein described, it is manifest that an action like the present one for the fulfilment of the obligation to reserve property to which it is believed José Veray Llamas was subject as the surviving spouse of Isabel Marxuach, should be governed by sections 935 and 936 of the Civil Code

and not by section 799, even admitting that this section was not repealed when the obligation to reserve, if any there were, arose prior to March 8, 1906, when the said section was repealed.

And this being the case, the exception to the obligation to reserve expressed in section 937 is also applicable. It reads as follows:

"Sec. 937.—The obligation to set apart shall cease when the children of a marriage, of age and who may have a right to the estate, should expressly renounce it, or when things given or left by the children to their father or mother, with knowledge that they had married a second time, are in question."

In commenting on article 970 of the Spanish Civil Code, which is similar to section 937 of the Revised Code, Scaevola expresses himself as follows:

"Article 970 prescribes that the obligation to reserve shall cease when it involves things given or left by the children to their father or mother with knowledge that he or she had married for the second time.

"Incidentally, this can in no way be termed a cessation of the obligation to reserve, for its effect is to exclude the said things therefrom. If the obligation as to such things does not begin, how can it be said to cease? It should be observed also that in this article the code yields to the use of the vernacular, substituting the terminology of things donated by that of given and of things devised or bequeathed by will by that of left only. Nevertheless, we should understand that it refers to donations and to wills, inasmuch as things given or left in another way are excluded from the reservation by article 969.

"Finally, the code requires that the donation or testamentary disposition in favor of the parent be made with knowledge that he had married a second time in order that the obligation to reserve may disappear.   *   *   *   The code excepts from the reservation the things donated or left in the case specified.   *   *   *   Where the code prescribes that the obligation shall cease it means that it does not begin; that it had no existence. However, the effect is the same in both hypotheses—*i. e.*, that things given or left with knowledge

that the parent had married a second time are not subject to the reservation. The principle of the reservation is partially destroyed; the interests of the children in the property which passes from their possession to that of the parent also depend upon the contingency of whether or not a will is made; but the provision of the code is very clear and we cherish no hope that its application may adjust itself to sound doctrine, contradicting in so far as necessary the text of the article." Scaevola, Vol. 17, pp. 218, 220.

We cannot go against the text of said article, for, according to section 13 of the same code, when a law is clear and free from all ambiguity the letter of the same shall not be disregarded under the pretext of fulfilling the spirit thereof. The meaning of "things" is defined in Title I of Book Second of the Civil Code.

Commenting on article 970 of the Spanish Civil Code, Bonel y Sánchez says:

"The provisions of this article are elementary and it cannot be doubted that the obligation to reserve property ceases when the right is waived by the person in whose favor it is created, provided that he is of age and makes the waiver voluntarily; or when things are involved which the children of the first marriage left to the surviving parent knowing that he or she had contracted a second marriage, for the law presumes that the child so acting toward his parent shows his desire that the person favored with such inheritance shall enjoy and dispose of the property as he may deem best without considering the person or line from which the property proceeds." Spanish Civil Code, Vol. 3, p. 631.

We regret that we cannot agree with the distinguished commentator José María Manresa y Navarro, whose opinion we quote as follows:

"Finally, article 970 excludes from the reservation the things given or left by children to their parent knowing that the latter had married a second time.

"In this case, although the property is acquired by lucrative title and proceeds from the children, there is no obligation to reserve such property, because one of the grounds of its institution being

the presumed intention of the predecessor in interest, this cannot be pleaded when from the acts of the children themselves a contrary intention is inferred, and the legislators should not give to the descendants more protection than the interested parties themselves wished to give them.

"Therefore, if one of the children who knew of the second marriage of his parent should desire to leave or donate to the latter a part of his property, rather than to his brothers or nephews, justice requires that the law should not impose the obligation to reserve such property. However, this cannot refer to a case where the father or mother acquires property from his or her children, by intestate succession or as heir at law, for then it is not the children that give or leave the property, but the law which imposes the obligation to leave the same and therefore an intention cannot be presumed which is incapable of existence."

The foregoing doctrine cannot be applied to a case in which by mandatory provision of the law the obligation to reserve the property ceases when there are involved things given by the children to their surviving parent knowing that the parent had married a second time. The exception is clear and needs no explanation.

According to the evidence introduced by the defendants, Francisco Veray Marxuach died in the year 1890 leaving a will executed before Notary Juan Arroyo Budía on October 28 of the same year, in which, after stating that "his mother had died; that he had no descendants; that his father, José Veray Llamas, is his sole heir, and that he has always lived under his protection, he named and instituted his said father, Veray Llamas, as his sole and universal heir, freely to possess and enjoy all the property, rights and interests of the testator." And the same evidence shows that Francisco Veray Marxuach knew that his father, José Veray Llamas, had contracted a second marriage with Amelia Marín, of which marriage two children had been born, for they all lived under the same roof and the said Amelia Marín patiently nursed Francisco Veray Marxuach during his illness,

bestowing upon him a mother's care up to the time of his death.

Therefore, José Veray Llamas was under no obligation to reserve the property and consequently his heirs or successors, the defendants, are under no such obligation. Hence, the Aguadilla court was justified in dismissing the complaint in all its parts.

As to the counter-complaint, we agree with the lower court that as no defect vitiating the record of possession of the urban property in question has been alleged, the prayer for its annulment cannot be sustained; but as we are of the opinion that there exists no right to the reservation, the nullity of the mention of the reservation in the record of possession and its cancellation in the registry follow as a consequence, especially as a possessory title proceeding is not the proper proceeding for the recording of the right of reservation.

For the foregoing reasons the judgment of the District Court of Aguadilla of February 26, 1916, is affirmed in so far as it dismisses the complaint and modified in so far as it dismisses the counter-complaint in the sense that although the nullity of the record of possession of the urban property in question cannot be adjudged, the mention of the reservation in the record should be adjudged void and so made to appear in the proper manner and form in the Registry of Property of Aguadilla.

*Modified and affirmed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.

On April 15, 1918, a motion for reconsideration was overruled.